IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELLY NASH FITZGERALD, as TRUSTEE OF THE JACKSON FAMILY MINERAL TRUST, on behalf of itself and a class of similarly situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>APACHE CORPORATION,<br><br>    Defendant. | Civil Action No. 4:21-cv-1306 |

## CLASS ACTION COMPLAINT

Plaintiff Shelly Nash Fitzgerald, as Trustee of the Jackson Family Mineral Trust ("Plaintiff"), on behalf of itself and the Class defined below, for its class action complaint against Defendant Apache Corporation ("Defendant" or "Apache"), alleges:

## FACTUAL ALLEGATIONS

1. This is a single count (breach of lease) royalty underpayment class action controlled by the plain language of oil and gas leases that Defendant or its predecessors in title drafted.

2. Plaintiff brings claims to remedy Defendant's systematic breach of express duties under the leases to pay royalties to Plaintiff and members of the Class for natural gas "used off the lease."[1]

---

[1] The claims here involve only gas, not oil, and more specifically only gas used off the lease premises. The claims do not concern the use of gas on-lease, which the leases expressly authorize in the on-lease free use clause.

3. Plaintiff is the successor in interest Lessor, and Defendant is the successor in interest Lessee, under the attached Lease (the "Lease," **Exhibit 1**). Defendant is the operator of the Jackson, Royal C /B/ #1-37 well on the Lease.

4. The relevant portion of the royalty clause of the Lease is in Paragraph 3, which provides for payment of royalty on gas used off the lease:

> 3. The royalties to be paid Lessors are: … (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or ***used off the premises*** or in the manufacture of gasoline or other product therefrom, the market value at the well of one-eighth (1/8) of the gas sold or used; …. (***Emphasis added***).

5. The gas royalty clause requires royalty to be paid on gas, including casinghead gas, used off the premises ("Off Lease Use of Gas" or "OLUG"). Gas is typically used off the lease premises to power the equipment that performs compression, dehydration, treatment, or processing services, or to pay in-kind for off-lease services by allowing the midstream service provider to keep all or part of the gas or its constituents for later sale on its own account.

6. The on-lease free use clause of the Lease is also in Paragraph 3, and provides:

> 3. … Lessee shall have free use of oil, gas, wood, and water from said land, except water from Lessors' wells, for all ***operations hereunder***; and the royalty on oil or gas shall be computed after deducting any so used. (***Emphasis added***).

7. Even absent a royalty provision requiring payment of royalty for OLUG, this on-lease free use clause expressly allows gas to be used only on the lease premises, so royalty must be paid for gas used off the lease premises.

8. Plaintiff's Lease and the members of the Class's leases contain the OLUG royalty clause, the on-lease free use clause, or both express provisions requiring Defendant to pay royalty on OLUG.

2

9. Although the Lease and the members of the Class's leases expressly require the payment of royalty on OLUG, Defendant does not do so.

10. Defendant concealed the systematic underpayment of royalty from Plaintiff and the members of the Class by falsely representing on the check stubs provided monthly to Plaintiff and the members of the Class that Defendant was paying royalty on the full volume and value of production from their wells, when in fact, it was not.

   a. ***Plaintiff and the Class Are Not Part of the Oil and Gas Industry and Do Not Have Expertise in How Midstream Gas Services Are Performed and When Gas Is or Is Not Used Off the Lease.*** While a midstream expert may know when and how gas is used off the lease, or if it is, because much of the midstream equipment runs on electric power (including processing plants) an individual royalty owner does not have that general midstream knowledge, let alone the specific knowledge of a midstream marketer or expert. Nor does an individual owner have the staff and resources of a major operator.

   b. ***Defendant Expected Plaintiff and the Class to Rely on Monthly Check Stubs.*** Defendant provided monthly accountings of the volume and value of gas from each well to Plaintiff and members of the Class and expected each to rely on the representations thereon.

   c. ***Plaintiff and the Class Did Rely on the Representations and Omissions on the Monthly Check Stubs.*** Unknowing that anything was awry, Plaintiff and the members of the Class relied on the affirmative representations on the monthly check stubs that they were being paid on the full volume and at

3

       the proper value for all gas, and on the omissions that no deductions were being taken for off lease use of gas, by both cashing their monthly checks and by not suing earlier.

d. ***Plaintiff and the Class Had No Notice that OLUG Was Not Being Paid For.*** There was nothing on the monthly check stubs that indicated or even raised an objective, reasonable suspicion that Defendant was not paying royalty on gas used off the lease. No public data would have suggested it either.

e. ***Plaintiff and the Class Could Not Have Discovered the Accounting Tricks by the Exercise of Reasonable Diligence.*** No amount of digging through public data or sources would have revealed that Defendant was not paying royalty on gas used off the lease. The materials that would have shown that information would have been midstream gas contracts and monthly midstream plant statements, both of which Defendant kept confidential and away from Plaintiff and other members of the Class.

f. ***Defendant Owed Plaintiff and the Class a Special Relation of Trust When Accounting to Them.*** Because everything that happens regarding accounting for the gas from Plaintiff and the Class Wells is within Defendant's unique and sole knowledge and control, Defendant knows that it has a special trust relationship, even if short of a fiduciary duty, with Plaintiff and members of the Class. Defendant controls every aspect of the relationship: it produces the gas, it signs the midstream contracts, it accepts payment, it calculates the royalties, and it makes the distributions to itself

and to royalty owners. Royalty owners are not involved in any one of these steps, and they are powerless to stop any accounting tricks Defendant engages in. It is an asymmetrical power imbalance that permits Defendant to take advantage of royalty owners and conceal cheating on royalty payments.

g. *Estoppel Applies Based on All of the Above Facts*. Plaintiff could not have discovered the wrongdoing, which was fraudulently concealed, such that Defendant is equitably estopped from claiming a statute of limitations defense in this case.

11. Plaintiff brings this action to recover royalty for OLUG that Defendant owes Plaintiff and the members of the Class under the express terms of their oil and gas leases.

## VENUE AND JURISDICTION

12. This Court has subject matter jurisdiction over the claims asserted in this complaint under 28 U.S.C. § 1332(d), because the proposed class has more than 100 members, at least one member of the class is a citizen of a State different from Defendant, the parties are minimally diverse, and the amount in controversy exceeds $5 million.

13. This Court has personal jurisdiction over Defendant because its principal place of business is in Texas and it regularly transacts business within this judicial district.

14. Venue in this judicial district is proper under 28 U.S.C. §1391 because: (1) a substantial part of the events or omissions giving rise to the claims occurred here; (2) Defendant is subject to this Court's personal jurisdiction with respect to this action; (3) Defendant resides and maintains its principal place of business in this judicial district; (4) many of the subject wells are

5

located here; (5) Defendant pays royalty on Plaintiff and the members of the Class's wells from this judicial district; and (6) Defendant does substantial continuous business here.

## PARTIES

15. Plaintiff Shelly Nash Fitzgerald, as trustee of the Jackson Family Mineral Trust, is a citizen and resident of the State of Idaho. Defendant pays royalty to Plaintiff on the Jackson, Royal C /B/ #1-37 well located in Hansford County, Texas.

16. Defendant is a corporation believed to be incorporated under the laws of the State of Delaware, and its principal place of business is located at 2000 Post Oak Boulevard, Suite 100, Houston, Texas 77056. Defendant may be served by serving its registered agent CT Corporation Systems at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

17. The acts charged in this Complaint as having been done by Defendant were authorized, ordered, or done by officers, agents, affiliates, employees, or representatives, while actively engaged in the conduct or management of Defendant's business or affairs, and within the scope of their employment or agency with Defendant.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action individually and, pursuant to Rule 23(a) and (b)(3), as the representative of a Class defined as follows:

> All current royalty owners in Texas wells where Apache Corporation (including its affiliated predecessors) was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011 to the date Class Notice is given under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both.

> Excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) Defendant and its affiliates, officers, and directors; (3) any publicly traded entity (and its affiliates) that produces, gathers, processes, or markets gas; (4) the claims of royalty owners

to the extent covered by arbitration clauses or prior settlement agreements, if any, still in effect on the date this lawsuit was filed; and (5) royalty paid by Defendant only as a pass-through for other non-affiliated entities.

19. The members of the Class are so numerous that joinder of all members is impracticable, numbering in the thousands.

20. Defendant markets or has marketed gas from thousands of Class Wells that produce gas. Defendant holds a working interest in these wells, with at least one, and usually multiple, royalty owners for each well.

21. Defendant has within its possession or control records that identify all persons to whom it (including affiliated predecessors and those for whom they are legally responsible) have paid royalties from Class Wells during the Class Period.

22. The questions of fact or law common to Plaintiff and the Class include, without limitation, one or more of the following:

    (a) Do the express terms of Plaintiff's and the members of the Class's oil and gas leases obligate Defendant to pay royalty on gas used off the leased premises?

    (b) Did Defendant fully pay Plaintiff and the members of the Class royalty on gas used off the leased premises?

    (c) Did Defendant breach the express terms of Plaintiff and the members of the Class's oil and gas leases by failing to fully pay royalty on gas used off the leased premises?

23. Plaintiff is typical of other members of the Class because Plaintiff's and the members of the Class's leases expressly obligate Defendant to pay royalty on gas used off the

leased premises, and Defendant pays royalty to Plaintiff and other members of the Class using a common methodology which does not pay royalty on such gas.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff understands its duties as Class representative. Plaintiff's interests in recovering royalty on gas used off the leased premises do not conflict with the recovery by the members of the Class, who are owed the same duties by Defendant to be paid the full amount of royalty owed on gas used off the leased premises. Plaintiff has retained counsel competent and experienced in class action and royalty owner litigation.

25. This action is properly maintainable and should be certified as a class action. Common questions of law or fact exist as to all members of the Class, and those common questions predominate over any individualized questions that would require evidence from each individual member of the Class. *See ¶* 22, above.

26. There is no need for individual members of the Class to testify in order to establish Defendant's liability or damages sustained by Plaintiff and members of the Class.

27. Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the Class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single forum, simultaneously, efficiently, and without duplication of time, expense, and effort on the part of those individuals, witnesses, the courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative forum exists for the fair and efficient adjudication of the claims of all members of the Class.

28. The amounts at stake for individual members of the Class, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

### COUNT I—Breach of Lease

29. Plaintiff and the Class incorporate by reference the allegations set forth in all other paragraphs of this Complaint.

30. Plaintiff and the other members of the Class, or their predecessors in title, entered into written, fully executed oil and gas leases with Defendant or its predecessors.

31. Plaintiff's and the other members of the Class's leases contain express OLUG clauses, on-lease free use clauses, or both, which obligated and required Defendant to pay royalty on all OLUG.

32. Defendant did not pay Plaintiff and the other members of the Class royalty on all OLUG.

33. At all material times, Plaintiff and the members of the Class have performed the terms and obligations under the Class leases, and all conditions precedent have been satisfied.

34. Defendant breached Plaintiff's and the Class's leases by using and/or contracting to allow third parties to use gas off the leased premises without paying royalty on that gas, and by its actions and/or inactions in underpaying royalty or not paying royalty on all gas used off the leased premises.

35. As a result of Defendant's breaches, Plaintiff and the members of the Class have been damaged through underpayment of the actual royalty amounts due under the leases.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an Order and Judgment against Defendant as follows:

a. Certifying this action pursuant to Rule 23(a) and (b)(3) as a class action, and appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, with reasonable notice to be given to members of the Class;

b. Awarding the Class actual damages, including pre-judgment and post-judgment interest thereon at the highest rate allowed by law or equity, for Defendant's breach of lease;

c. Granting the Class the costs of prosecuting this action together with reasonable attorney's fees and expenses out of the common fund recovery; and

d. Granting such other relief as this Court may deem just, equitable and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all matters so triable.

**ATTORNEYS' LIEN CLAIMED**

Respectfully Submitted,

SHARP LAW, LLP

*/s/ Rex A. Sharp*
Rex A. Sharp
Attorney-In-Charge
Texas Bar # 18118800, SDTX Bar # 6272
Allison B. Waters
Texas Bar # 00795994, SDTX # 27568
SHARP LAW, LLP
5301 West 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
awaters@midwest-law.com

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**