United States District Court
Southern District of Texas
**ENTERED**

December 20, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

SHELLY NASH FITZGERALD,              §
as trustee for the Jackson Family    §
Mineral Trust,                       §
                                     §
            Plaintiff,               §
                                     §
VS.                                  §          CIVIL ACTION NO. H-21-1306
                                     §
APACHE CORPORATION,                  §
                                     §
            Defendant.               §

**MEMORANDUM OPINION AND ORDER**

Royalty payments on oil and gas leases have raised interpretation, valuation, calculation, and application questions.  This case requires revisiting these questions, in the context of these agreements and the binding law.

This opinion is the second in the Southern District of Texas within a few weeks, in cases that raise virtually identical lease provisions and contentions.  Besides this case, Judge Ellison decided *Carl v. Hilcorp Energy Co.*, No. 4:21-CV-02133, 2021 WL 5588036 (S.D. Tex. Nov. 30, 2021), granting the lessor's motion to dismiss, but with leave to amend.   Sometimes it is good to have the second opinion to issue; Judge Ellison's opinion provides valuable guidance.

The plaintiff, Shelly Nash Fitzgerald, for herself and as a representative of a putative class, sued Apache Corporation for breaching her mineral lease by underpaying royalties.  The parties agree about some basic points.  They agree that they are parties to a market-value-at-the-well lease that has a free-use on-lease clause.  They agree that under a market-value-at-the-well lease, Apache, as lessee, is entitled to deduct postproduction costs before calculating the royalty payment

for the lessor, Fitzgerald. They agree that the gas at issue is exclusively used or sold in-kind for off-lease postproduction activities.

The issue is whether Apache has paid a royalty on the correct amount of this off-lease gas. Fitzgerald argues that a royalty is owed on the gas that Apache uses for any off-lease activities, even though Apache may also deduct the gas as a postproduction cost before calculating the value of the royalty payments.  Apache argues that it does not owe a royalty payment because the gas is used only for postproduction activities.  Fitzgerald responds that whether a royalty is owed at all is a different question from whether the postproduction costs can be deducted in calculating that royalty by the market value of the gas at the well.  Fitzgerald argues that Apache is disputing only the amount of royalty payments owed, not whether there is any obligation to pay royalties at all. Fitzgerald argues that this is a factual issue that the court cannot resolve at the motion to dismiss stage.

Apache moved to dismiss, Fitzgerald responded, and Apache replied.  The court heard argument and requested supplemental briefing.  Based on the pleadings, the motion and response; the extensive briefing, the arguments of counsel, and the applicable law, the court grants the motion to dismiss without prejudice and with leave to amend.  The reasons are set out below.

## I.    Background

Fitzgerald is a successor-in-interest lessor of the lease at issue.  Apache is the operator of the Jackson, Royal C/B/#1-37 well located in Hansford County, Texas, and the successor-in-interest lessee to the lease at issue.  Fitzgerald alleges that "[g]as is typically used off the lease premises by Defendant and others to power the equipment that performs compression, dehydration, treatment, or processing services, or to pay in-kind for off-lease services by allowing the midstream service provider to keep all or part of the gas[.]" (Docket Entry No. 23 at ¶ 5).

2

Fitzgerald alleges that Apache pays "no royalty" for the gas used off-lease, despite two lease clauses requiring payment. (Docket Entry No. 23 at ¶ 10).

The first, a "market value at the well" clause, states that:

> The royalties to be paid Lessors are: . . . (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold **or used off the premises** or in the manufacture of gasoline or other product therefrom, the market value at the well of one-eighth (1/8) of the gas sold or used;

(Docket Entry No. 23-1 at ¶ 3 (emphasis added)). The second, an on-lease free-use clause, provides:

> . . . Lessee shall have **free use** of oil, **gas,** wood, and water from said land, except water from Lessors' wells, **for all operation hereunder**; **and the royalty on oil or gas shall be computed after deducting any so used.**

(Docket Entry No. 23-1 at ¶ 3 (emphasis added)). Fitzgerald argues that both provisions independently require a royalty payment for gas used off the lease and that Apache has breached the lease by deducting the gas used off-lease from the amount of gas on which they pay royalty.

Fitzgerald gives an example to support its claim that "no" royalties are paid on the gas used off-lease. (Docket Entry No. 23 at ¶ 10). In Fitzgerald's example, 100 mcf of gas is produced from the lessor's well, 20 mcf of gas is consumed in postproduction services, and Apache pays a royalty on the remaining 80 mcf that it sells. (Docket Entry No. 23 at ¶ 10). Fitzgerald alleges that she is owed royalties on the 20 mcf of consumed gas, but Apache pays royalties on only the 80 mcf of gas that is sold. Fitzgerald relies on the Apache paystubs that show the gross volume and gross value of the gas sold but the stubs do not show the volume and value of the gas that is used off lease. (Docket Entry No. 23 at ¶ 12 (citing Docket Entry No. 23-2)). Fitzgerald alleges that Apache concealed the systematic underpayment of royalties "by falsely representing on the check stubs provided monthly to Plaintiff and the members of the Class that Defendant was paying

3

royalty on the full volume and value of production from their wells, when in fact, it was not."
(Docket Entry No. 23 at ¶ 13).

Fitzgerald brings a single claim for breach of lease as an individual and as a representative of a putative class. The class is defined as:

> All current royalty owners in Texas wells where Apache Corporation (including its affiliated predecessors) was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) from April 1, 2011 to the date Class Notice is given under oil and gas leases which expressly contain the off-lease use of gas royalty clause, the on-lease free use clause, or both.

(Docket Entry No. 23 at ¶ 21).

Apache argues that the claim should be dismissed because Fitzgerald only alleges the non-payment of gas used in postproduction and Apache does not owe a royalty payment on postproduction costs. (Docket Entry No. 30 at 5).

In Judge Ellison's case, *Carl v. Hilcorp Energy Co.*, the royalty provision and free use clauses are nearly identical to the clauses in Fitzgerald's lease. 2021 WL 5588036, at *1. The lessor alleged that the lessee breached the lease by failing to pay royalties on gas used off-lease or as in-kind payment for off-lease services during postproduction. *Id.* The court explained that the market-value-at-the-well clause requires the lessee to deduct postproduction costs, which does not conflict with the free-use clause that applies to produced gas used on the leased premises. *Id.* at *4. The court dismissed the plaintiffs' claims. *Id.* at *5. The court did grant leave to amend to allow the plaintiffs to include allegations that the defendant "is using gas off the lease premises for purposes unrelated to post-production activities and failing to pay royalties for those uses." *Id.*

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a),

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III.   Analysis

In interpreting a contract, a court's objective is to "ascertain the parties' true intentions as expressed in the writing." *BlueStone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021). The court begins with "the contract's express language." *Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019), *reh'g denied* (May 31, 2019). A court "examine[s] and consider[s] the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* The court should construe the contract "as a whole and interpret the language according to its plain, ordinary, and generally accepted meaning unless the lexical environment demands otherwise." *Randle*, 620 S.W.3d at 387. An oil and gas lease is a contract, and its terms are interpreted according to rules of contract construction. *Burlington*, 573 S.W.3d at 203.

To show breach of the contract—the mineral lease—Fitzgerald must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston[1st Dist.] 2001, no pet.)). Apache argues that dismissal is appropriate because Fitzgerald's complaint fails to state a plausible claim for breach of the lease agreement or allege damages.

A.     **Market-Value-at-the-Well Royalty Clauses**

"A royalty payment, which represents a lessor's fractional share of production from a lease, may be calculated at the wellhead or at any downstream point, depending on the lease terms." *Randle*, 620 S.W.3d at 387. A royalty clause usually has "at least three components: (i) the royalty fraction—e.g., 1/8th, 25%, 1/5th; (ii) the yardstick—e.g., market value, proceeds, price; and (iii) the location for measuring the yardstick—e.g., at the well, at the point of sale." *Id.* (citation and quotations omitted).

Fitzgerald's lease state that royalties on gas sold or used off the premises are paid based on "the market value at the well of one-eighth (1/8) of the gas sold or used." (Docket Entry No. 23-1 at 2). "Market value" means "the price a willing buyer under no compulsion to buy will pay to a willing seller under no compulsion to sell." *Randle*, 620 S.W.3d at 388 (quotations and citations omitted). Market value, if possible, is calculated by using "actual sales that are 'comparable in time, quality, quantity, and availability of marketing outlets.'" *Id.* If comparable sales data is unavailable, the market value at a certain valuation point may be calculated through the "net-back" or "workback" method. *Id.* "When the location for measuring market value is 'at the well' (or equivalent phrasing), the workback method permits an estimation of wellhead market value by using the proceeds of a downstream sale and subtracting postproduction costs incurred between the well and the point of sale." *Id.* at 388–89. "Although parties may define post-production costs any way they choose, the term generally applies to processing, compression, transportation, and other costs expended to prepare raw oil or gas for sale at a downstream location." *Burlington*, 573 S.W.3d at 203. The workback method comes from the understanding that "[o]il and gas production is less valuable at the wellhead because any arm's length purchaser will assume that it will have to incur the costs to remove impurities from the production, to transport it from the wellhead, or

otherwise to get it ready for sale to a downstream market or the general public." *Randle*, 620 S.W.3d at 389.

### B.     Free Use On-Lease Clauses

The free-use clause provides that "Lessee shall have free use of oil, gas, . . . , for all operation hereunder; and the royalty on oil or gas shall be computed after deducting any so used." (Docket Entry No. 23-1 at 3).

The Supreme Court of Texas recently interpreted a free-use clause with nearly identical language in *Randle*, 620 S.W.3d 380 (Tex. 2021). The court first addressed whether an addendum provision requiring the lessee to "compute and pay royalties on the gross value received" conflicted with another lease provision requiring royalties to be "computed at the mouth of the well." *Id.* at 384. The court explained that gross and net are opposite calculations and the parties in *Randle* agreed to the addendum with a gross-proceeds calculation, so the gross proceeds provision governed. The court then proceeded to interpret the free use provision in the lease. The court acknowledged that, "Regardless of how royalties are calculated, Bluestone claims a royalty-free right to use leasehold gas in off-lease operations so long as any such use 'benefits' or 'furthers' the lease operations." *Id.* at 393. The Court explained:

> A "free use" clause is a provision in an oil and gas lease that "governs the right of a lessee to use products derived from the leased premises in the operation of said lease." When such a clause is present in a lease, free-use gas is excluded when calculating the lessor's royalty on production. . . . [W]hether a free-use clause is geographically unconstrained depends on whether the parties' lease expresses such an agreement.

*Id*. at 393–94. The free-use clause in *Bluestone* stated that "Lessee shall have free from royalty or other payment the use of . . . gas . . . produced from said land in all operations which Lessee may conduct hereunder, . . . and the royalty on . . . gas . . . shall be computed after deducting any so used." *Id.* at 394. The court explained that "the lease's plain language contemplates free use

limited to the leased premises and does not, by express language or otherwise, make any use that 'benefits' or 'furthers' the lease operations royalty free." *Id.* at 394.  The court concluded that the free-use clause did not "authorize a royalty-free use of gas off-lease." *Id.* at 399.  The court was worried about the lack of a limiting principle if the lease was interpreted as extending free use beyond the leased premises, which could "inject uncertainty and lead to a fact-finding mission to determine whether progressively more attenuated uses 'benefit' or 'further' the lease operations." *Id.* at 398–99.

The court declined to follow courts interpreting free use clauses to extend beyond the leased premises. *Id.* at 395–97.  In *Bice v. Petro-Hunt*, the North Dakota Supreme Court permitted free off-lease use where the gas from multiple leases was processed in a centralized tank.  768 N.W.2d 496 (N.D. 2009).  The court explained that without permitting free use off-lease, there would be "an absurd result" in which lessors who had the central tank on their property would bear the processing cost burden for all lessors. *Id.* at 504.  The Texas Supreme Court summarized *Bice* to mean, "that but for the lessee's consolidation of operations, the disputed volumes of gas would have been consumed on-lease and therefore free of royalty, and the consolidation of the tank-battery operations did not harm the lessors but instead provided a benefit." *Randle*, 620 S.W.3d 380, 396 (Tex. 2021).

In *ConocoPhillips Co. v. Lyons*, the New Mexico Supreme Court concluded that the free use provision at issue applied "to the free use of oil and gas produced *from* the leased premises, regardless of where the use occurred, so long as the oil and gas was being used to further the economical operations of said land."  299 P.3d 844, 856 (N.M. 2013).  The New Mexico Supreme Court relied on the language in the leases that permitted the free use of gas "incident to or convenient for the economical operation of said land." *Id.* at 857.  In distinguishing *Lyons*, the

Texas Supreme Court highlighted the lease language permitting the free use to extend to "economical" operations. *Randle*, 620 S.W.3d at 396–97.

The Texas Supreme Court declined to follow *Bice* or *Lyons*, and instead followed *Anderson Living Trust v. Energen Resources Corporation*, 886 F.3d 826 (10th Cir. 2018). *Anderson Living Trust* interpreted two sets of leases, one under Colorado law and one under New Mexico law. The Tenth Circuit interpreted New Mexico law, based on *Lyons*, as limiting free-use clauses based on "purposes for which the gas may be used—furtherance of the lease operations," rather than a limitation on where the gas use occurred. *Id.* at 845. The Tenth Circuit interpreted Colorado law as limiting free use to the leased premises. *Id.* at 849. The Colorado lease required the lessee to pay royalties on "gas (1) produced from a well on the leased premises and (2) sold or used off the leased premises." *Id.* The Tenth Circuit concluded that the royalty provision also required royalties to be paid on gas used off the lease. *Id.*

In *Randle*, the Texas Supreme Court explained that the free-use clause at issue used similar language to the clause in *Anderson Living Trust*, and "the plain meaning of the language accords with on-lease uses and is not reasonably construed as extending to off-lease uses." *Randle*, 620 S.W.3d at 398. "Because the parties have stipulated that Plant Fuel is used off the leased premises by a third-party processor, royalties are due on that gas." *Id.* at 399. The plant fuel was gas used by a third-party processor to fuel plant operations. The court concluded that Bluestone "breached the lease by not paying any royalties on volumes of gas used off-premises . . . as Plant Fuel," and Compressor Fuel. *Id.* at 399–400. The court concluded that Bluestone did not breach the lease by failing to pay royalties on gas that was returned to the leased premises to power compressors on lease. *Id.* at 400.

10

C.      **Fitzgerald's Lease**

Apache argues that it "has no liability if it deducted only post-production costs under a market value at the well lease." (Docket Entry No. 38 at 4). Fitzgerald agrees that the gas at issue was used in postproduction services or as compensation to midstream operators, and can be deducted in determining the market value at the well of gas that is sold. But Fitzgerald argues that Apache is still liable for royalties on the gas used off-lease because the market value at the well clause addresses only the valuation of the royalty payment and does not address the amount of gas on which Apache owes a royalty. Fitzgerald contends that Apache's interpretation would transform the market value at the well clause into a free-use clause, and that to permit Apache to freely use gas off the lease without paying royalties would also make the free use provision superfluous.

The free-use provision here closely resembles the provision at issue in *Randle*:

Lessee shall have free use of oil, gas wood, and water from said land, except water from Lessors' wells, for all operation hereunder; and the royalty on oil or gas shall be computed after deducting any so used.

(Docket Entry No. 23-1 at 3). The provision in *Randle* was:

Lessee shall have free from royalty or other payment the use of ... gas ... produced from said land in all operations which Lessee may conduct hereunder, including water injections and secondary recovery operations, and the royalty on ... gas ... shall be computed after deducting any so used.

*Randle*, 620 S.W.3d at 394. Apache urges that *Randle*'s interpretation of the free-use clause is not dipositive here because the lease in *Randle* did not have a market-value-at-the-well term, so the court was interpreting only the meaning of the free-use provision, without the requirements of a market-value-at-the-well lease.

The court in *Randle* explained that "[r]egardless of how royalties are calculated, Bluestone claims a royalty-free right to use leasehold gas in off-lease operations so long as any such use

11

'benefits' or 'furthers' the lease operations." *Id*. at 393.  In *Anderson Living Trust*, which provided

the guidance for *Randle*, the Tenth Circuit interpreted a market-value-at-the-well lease with a free-

use provision under New Mexico law. The court concluded that "[a]pplying this plain meaning to

the 'free use' clause in the [] lease, it seems the clause requires that the use of gas 'found on said

land' be for operations 'on that' land." *Anderson Living Tr.*, 886 F.3d at 844.  Although the court

concluded that the free-use clause could be interpreted more broadly because of the expansive

reading of free-use clauses under New Mexico law, *Anderson Living Trust* supports reading the

free-use clause as limiting free use to the leased premises.  The Tenth Circuit also concluded that

the "expansive" interpretation under New Mexico law did not apply to the Colorado leases; the

lessee owed royalty for gas used as fuel off-lease by the third-party processing companies.  *Id.* at

845, 848–49.

The Texas Supreme Court acknowledged that the royalty provision in the Colorado leases

in *Anderson Living Trust* separately supported the conclusion that royalties must be "paid on gas

produced from the leased premises and sold or used off the leased premises." *Randle*, 620 S.W.3d

at 398 (citing *Anderson Living Tr.*, 886 F.3d at 850 (10th Cir. 2018)).  The supreme court

interpreted *Anderson Living Trust* as concluding that royalties were owed under the Colorado lease

based on "both the royalty clause and the 'free use' clauses." *Randle*, 620 S.W.3d at 398.  The

court's reliance on *Anderson Living Trust* suggests that the interpretation of the free-use clause

was not tethered to the nature of the royalty provision, and that the free-use provision does not

permit royalty-free off-lease use.

In *Carl*, the court concluded that *Randle*'s interpretation of the free use provision was

inapplicable because the lease at issue in *Randle* was not a market-value-at-the-well lease. *Carl*,

2021 WL 5588036, at *4.  Whether *Randle* is instructive here or not, the court agrees with *Carl*

12

that the free-use clause "can be read in harmony" with the market-value clause. *Id.* at *4. Even if the free-use clause permits free-use only on the leased premises and requires royalties for off-lease use generally, Apache may still be entitled to deduct the off-lease fuel as a postproduction cost under the royalty clause, such that no royalty payment is owed on the gas used. Apache explains that the two clauses address different issues. The free-use clause addresses gas used on the leased premises, and the market-value provision addresses the deduction of postproduction costs wherever they occur. This was Judge Ellison's conclusion in *Carl* and the court agrees. As Judge Ellison explained in *Carl*, *Randle* did not need to address whether another provision applied to the off-lease uses. *Carl*, 2021 WL 5588036, at *4. So even if *Randle*'s interpretation of the free use provision is instructive, it is not dispositive on the ultimate question of royalties owed.

As described above, under the workback method, Apache may calculate market-value at the well by "using the proceeds of a downstream sale and subtracting postproduction costs incurred between the well and the point of sale." *Randle*, 620 S.W.3d at 388–89. The gas that is used off lease here is a postproduction cost paid as in-kind payment or used in postproduction services before the gas is sold. *Piney Woods Country Life Sch. v. Shell Oil Co.*, 905 F.2d 840 (5th Cir. 1990) ("Piney Woods IV") involved a dispute about royalty owners' interest in gas that was used to run a processing plant. The Fifth Circuit explained that "the plant fuel is gas used off the lease and the lessors are entitled to market value royalty on that gas. Shell may, however, treat the royalty payments as processing costs to be divided, as any other processing costs, among the various working and royalty interests." *Piney Woods IV*, 905 F.2d at 855–56 (citing *Piney Woods Country Life Sch. v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir. 1984) ("Piney Woods II"). The court highlighted a difference between plant fuel and other processing costs:

> Because the gas used as plant fuel comes directly from the pool of gas that would
> otherwise be sold, plant fuel is unlike other cost components of producing the gas.

13

> Plant fuel is produced and consumed in the process. Because Shell must pay cash for them, other cost components must be itemized and later deducted from sales revenues; plant fuel, on the other hand, is simply deducted directly from the supply of gas to be sold.

*Piney Woods IV*, 905 F.2d at 857.  In *Piney Woods IV*, the lessee argued:

> it owe[d] the royalty owners nothing, as the royalty payments on plant fuel that would be due to them are exactly balanced by the share of the processing costs that are to be borne by the royalty owners. Shell asserts that its plant-lease split formula is a conceptually proper allocation of costs and that when it is correctly applied, no net payments are due to the royalty owners.

*Id.* at 856.  The Fifth Circuit explained that "[t]he royalty owners' entitlement to their royalty share of the plant fuel was always precisely equal to their obligation to pay their royalty share of this processing cost."  *Id.* at 857.  In sum:

> Quite simply, under the terms of the royalty agreement, because plant fuel is gas used off the lease, the royalty owners are entitled to a royalty share on this gas, and because the plant fuel materially enhances the value of the gas (giving the royalty owners more than the at-the-well value for which they bargained), the cost of plant fuel must be borne by the royalty owners in proportion to their royalty share.

*Id.*  The royalty owners were not entitled to a net gain of royalty payments and were owed no further royalty payments.  *Id.*

Fitzgerald concedes that whether the gas is sold or the gas is used off lease, her royalty is based on the market value, which requires the deduction of postproduction costs.  (Docket Entry No. 39 at 44).  Fitzgerald has failed to explain how she could both be owed royalties on gas that is consumed in the postproduction process and receive a royalty payment at market value for gas that is sold.  As the Fifth Circuit explained in *Piney Woods IV*, "[l]ogic and equity dictate that all of the plant fuel value is a processing cost; none of this fuel survives to be marketed by any of the working interest owners; by definition, it is all used to facilitate the production of the gas that is sold."  *Id.*  Fitzgerald's counsel conceded at the motion hearing that Fitzgerald's royalty payment for gas that is used off-lease would be subject to some amount of deductions.  (Docket Entry No.

14

39 at 43).  But if all the gas used off lease is consumed in postproduction services for gas that is sold, there is no amount of remaining gas used for which a royalty payment could be calculated. Fitzgerald has failed to explain how the gas consumed in the process could have a market value greater than zero.

Fitzgerald argues that the market-value clause specifies how much is owed, and only "qualifies" the obligation, but "does not wipe out the obligation (whether it is owed)."  (Docket Entry No. 49 at 2).  But Fitzgerald needed to allege there is some amount of gas used off lease for which the market value amounts to more than zero, and that when properly accounted, she would be entitled to a net gain of a royalty payment.  As *Piney Woods IV* demonstrates, she very well may not be entitled to a net gain.  Fitzgerald argues that *Piney Woods IV* is different because the court's conclusion that the royalty payment and postproduction costs zeroed out followed two trials.  But, again, Fitzgerald has not alleged that there is *any* gas for which a royalty is owed that is not itself properly deducted as a postproduction cost.  As in *Carl*, Apache, as a matter of law "is entitled to deduct value-enhancing postproduction costs under this lease," and Fitzgerald has only alleged that Apache deducted postproduction costs.  *See Carl*, 2021 WL 5588036, at *4–*5.

Because Fitzgerald has only pled that Apache deducted costs that it was permitted to deduct from the market value of gas that is sold, Fitzgerald has not alleged that Apache underpaid her royalties for gas sold or used off the lease.  Without any allegations to support that Fitzgerald received an underpayment of royalties, Fitzgerald has failed to state a claim for breach.

Even if Fitzgerald's allegations were sufficient to state a claim for breach, without alleging that she would be entitled to a net gain, she has not alleged damages resulting from the breach. Without actual damages, Fitzgerald cannot satisfy an essential element of a breach of contract claim.  *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016).  *See*

*also Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009) ("[M]oney damages are essential in contract claims seeking money damages (though not for contract claims seeking something else).").

The court grants the motion to dismiss without prejudice and with leave to amend. Apache urges that leave to amend would be futile. Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Rule 15 "evinces a bias in favor of granting leave to amend*." Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citations omitted). "A district court must possess a 'substantial reason' to deny a request for leave to amend, but 'leave to amend is by no means automatic.'" *Id.* (citation and quotations omitted). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981). As in *Carl*, Fitzgerald may be able to state a claim if she alleges that Apache is withholding payments on gas used off-lease in activities unrelated to postproduction. There is no substantial reason to deny leave to amend here.

**IV.    Conclusion**

Apache's motion to dismiss, (Docket Entry No. 30), is granted without prejudice and with leave to amend by February 11, 2022.

SIGNED on December 20, 2021, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge

16